IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| ALICE JENNIFER RODRIGUEZ | § | |
| | § | |
| v. | § | Case No. 5:21-cv-43 |
| | § | |
| LAREDO REGIONAL MEDICAL CENTER, | § | |
| L.P. D/B/A DOCTORS HOSPITAL OF | § | |
| LAREDO, UNIVERSAL HEALTH SERVICES, | § | |
| INC., DR. PRAKASH HEDGE, | § | |
| DR. PAUL CHRISTOPHER GIASI, | § | |
| DR. SANDRA TARAPASADE, AND | § | |
| DR. ROBERT KIETH LANDRY | § | |

**DEFENDANT UNIVERSAL HEALTH SERVICES, INC.'S RULE 12(b)(2) MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND RULE
12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM
UPON WHICH RELIEF CAN BE GRANTED**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant UNIVERSAL HEALTH SERVICES, INC. ("UHS") respectfully submits this Motion to Dismiss Plaintiff's Complaint (the "Complaint") as to all counts asserted against it pursuant to Rule 12(b)(2) and Rule 12(b)(6) of the Federal Rules of Civil Procedure, and pursuant to 28 U.S.C. §§ 1404 and 1406(a).  In support thereof, UHS states as follows:

### INTRODUCTION

Alice Rodriguez ("Plaintiff") seeks to recover for damages allegedly sustained due to a lack of medical care.  Plaintiff's Complaint alleges that she presented to Doctors Hospital Laredo ("DHL") and was seen by Nurse Practitioner, Juan Antonio Lira-Escobedo, ("Mr. Lira-Escobedo") who purportedly discharged without assessment by either physician Paul Gaisi, M.D. ("Dr. Gaisi") or Robert Landry, M.D.  ("Dr. Landry").

According to the Complaint, on December 16, 2019, Plaintiff presented to DHL's emergency department with signs and symptoms consistent with a severe and deadly allergic reaction to prescription medication, Lamictal. (Doc 1-2, P. 7, ¶ 21-23) During Plaintiff's emergency room presentation Mr. Lira-Escobedo proceeded to examine, diagnose, treat and discharge Plaintiff with instructions to follow up with her primary care provider and return to the hospital should her symptoms worsen. (Doc 1-2, P. 8, ¶27-28)  The next day, Plaintiff returned to the hospital, was admitted and subsequently transferred to another hospital with a burn unit three days later. (Doc 1-2, P. 10, ¶27-28)  Plaintiff alleges that during the emergency department visit, despite Plaintiff's "extreme symptoms," high emergency severity index score and inconclusive diagnostic tests, Plaintiff was not examined by Dr. Landry nor Dr. Gaisi and was discharged. (Doc 1-2, P. 9, ¶22 - 27)  As a result, Plaintiff's allergic reaction was allegedly allowed to progress, purportedly causing catastrophic injuries. (Doc 1-2, P. 9, ¶32)

While Plaintiff avers that her claim is a healthcare liability claim (Doc 1-2, P. 10, ¶46), Plaintiff's claim is properly characterized as an Emergency Medical Treatment and Labor Act ("EMTALA") claim.  EMTALA imposes two requirements on a hospital: (1) that the hospital provide appropriate medical screening to determine whether a medical emergency exists; and (2) that the hospital stabilize the medical condition or transfer the individual to another medical facility. 42 U.S.C. §1395dd(b).  In this case, Plaintiff alleges that she presented in an emergent condition and the hospital failed to provide an appropriate medical screening by not providing her with a physician.  Even though Plaintiff attempts to recast the act that allegedly caused Plaintiff's claim from an EMTALA claim to a negligence claim, the crux of Plaintiff's claims is this: On December 16, 2019, Plaintiff presented to hospital in an emergent condition

2

and DHL failed to provide an appropriate medical screening and to stabilize her prior to discharge. Plaintiff's negligence claim is thus an EMTALA claim. As such, UHS and DHL removed the action to this Court on April 16, 2021.

UHS is a holding company that operates through its subsidiary facilities and performs no separate day-to-day operations at DHL.[1] UHS neither provides healthcare services nor provides operational management services to its subsidiary facilities.[2] UHS does not employ, hire, train, educate, or supervise the nursing staff, the physicians, or the resident physicians working at DHL.[3]  UHS is not licensed as a healthcare provider in Texas or anywhere else in the United States and did not provide healthcare to Plaintiff.[4]

As pled, Plaintiff's allegations can only be interpreted to allege the following four claims against UHS: (1) negligence; (2) EMTALA claims; (3) derivative liability stemming from the actions of DHL; and (4) derivative liability stemming from the actions of physicians.   In accordance with Federal Rule of Civil Procedure 12(b), UHS files its 12(b) motions prior to a responsive pleading on the following grounds:

(I)      <u>12(b)(2) Motion to Dismiss for Lack of Jurisdiction</u>: UHS is not a Texas resident. As such, Plaintiff bears the burden to allege facts sufficient to establish that UHS purposefully availed itself of this forum, a burden Plaintiff fails to meet. Plaintiff has not alleged facts sufficient to show that (1) UHS has such extensive contacts in Texas to constitute the "exceptional case" and render it "at home" in this State for general jurisdiction; or (2) that the actions of DHL, physicians, and nurse practitioners are attributable to UHS to establish

---

[1] *See* Exhibit A: Affidavit
[2] *Id.*
[3] *Id.*
[4] *Id.*

specific jurisdiction. Therefore, Plaintiff cannot establish personal jurisdiction over UHS in Texas.

**(II)   12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted:** Plaintiff bears the burden to allege facts sufficient to state a plausible claim for relief. However, Plaintiff's claim is predicated on the actions of DHL and/or physician defendants because UHS owes Plaintiff no duty.  Plaintiff has not alleged facts sufficient to show UHS controlled DHL or the physicians.  Therefore, Plaintiff cannot establish UHS owed a duty to Plaintiff.  Alternatively, Plaintiff failed to plead sufficient facts to state a plausible claim for relief. Therefore, Plaintiff's claims must be dismissed.

## I.
## 12(b)(2) MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**A.   Legal Standard.**

"A federal court may exercise personal jurisdiction over a nonresident defendant if (1) the long-arm statute of the forum state confers personal jurisdiction over that defendant; and (2) exercise of jurisdiction by the forum state is consistent with due process under the United States Constitution."[5]  Pursuant to the Due Process Clause, a court lacks jurisdiction over a nonresident defendant unless that defendant maintains sufficient minimum contacts with the forum state.[6]  "A defendant's 'minimum contacts' may give rise to either specific personal jurisdiction or general personal jurisdiction, depending on the nature of the suit and

---

[5] *Gardner v. Forest River, Inc.*, 2017 WL 2869432, at *2 (W.D. Tex. July 5, 2017) (citing *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)).

[6] *See Cantwell Family Tr. (1998) v. Hyten*, 2015 WL 5165283, at *1 (W.D. Tex. Sept. 2, 2015) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L.Ed. 95 (1945); *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)).

4

defendant's relationship to the forum state."[7]  The plaintiff has the burden to make a prima facie showing that personal jurisdiction is proper.[8]  The Court may only accept a plaintiff's jurisdictional allegations if they are uncontroverted.[9]  "In considering a motion to dismiss for lack of personal jurisdiction a district court may consider 'affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.'"[10]

## B.    UHS is not Subject to General Jurisdiction in Texas.

The U.S. Supreme Court made clear that, other than in very rare circumstances, a corporate defendant is amenable to general jurisdiction only in its state of incorporation and its principal place of business. The Supreme Court's decision in *Daimler AG v. Bauman* is particularly instructive here.   In *Daimler*, the plaintiffs sued Daimler AG ("Daimler"), a corporation that is organized in Germany and maintains its principal place of business in Germany, in the United States District Court for the Northern District of California.[11]  The plaintiffs claimed the California court could exercise jurisdiction over Daimler because of the company's agency relationship with its subsidiary, Mercedes–Benz USA ("MBUSA").[12] MBUSA, Daimler's exclusive importer and distributor in the United States, was incorporated under Delaware law and had its principal place of business in New Jersey.[13]  MBUSA's annual sales of Daimler vehicles in California, however, generated approximately $4.6 billion in

---

[7] *Id.* (citing *Freudensprung*, 379 F.3d at 343).

[8] *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (citation omitted).

[9] *Id.*

[10] *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002).

[11] *Daimler AG v. Bauman*, 134 S. Ct. 746, 751, 187 L. Ed. 2d 624 (2014).

[12] *Id.* at 752.

[13] *Id.* at 751-52.

revenues—2.4% of Daimler's global sales—and MBUSA maintained several facilities in the state, including a regional office and a vehicle preparation center.[14]

The Supreme Court unanimously held that even if MBUSA's contacts could be attributed to Daimler—an issue the Court did not decide—the trial court still would not have general jurisdiction over Daimler.[15] The Court explained that to establish general jurisdiction over a foreign corporation, plaintiffs must show that the corporation's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State."[16] Under this heightened standard, "[i]t is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business."[17]

Since *Daimler*, the Supreme Court reaffirmed the high bar plaintiffs must surmount to establish general jurisdiction over corporate defendants in states other than their place of incorporation or principal place of business.  Just five years ago, in *BNSF Railway Co. v. Tyrell*, the Court held that an American-based railroad company, BNSF, was not subject to general jurisdiction in Montana even though it had over 2,000 miles of track (6% of its total track) in Montana, employed more than 2,000 employees (approximately 5% of its total work force) in Montana, and maintained an automotive facility (4% of its total automotive facilities) in Montana.[18]   Rejecting the Montana Supreme Court's attempt to distinguish *Daimler*, the Supreme Court made clear that *Daimler* "applies to all state-court assertions of general

---

[14] *Id.* at 751-52, 758; see id. at 766-67 (Sotomayor, J., concurring).
[15] *Id.* at 760.
[16] *Id.* (emphasis added).
[17] *See Ritter*, 768 F.3d at 432.
[18] *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1554, 1559 (2017).

jurisdiction over nonresident defendants; the constraint does not vary with the type of claim asserted or business enterprise sued."[19]

Applying these principles from *Daimler* and *BNSF*, the Beaumont Court of Appeals held last year in *Ford Motor Company v. Cejas* that Ford, which is a Delaware corporation with its principal place of business in Michigan, is not subject to general jurisdiction in Texas despite having extensive contacts with the state.[20]  The plaintiffs alleged that Ford's contacts with the state included designing products for the Texas market, advertising in Texas, establishing regular communications with customers in Texas, marketing its products through distributors who sell its vehicles in Texas, owning property and maintaining offices and employees in Texas, paying taxes in Texas, and maintaining a registered agent in Texas.[21]  Consistent with *Daimler* and *BNSF*, the court held that those contacts were "insufficient to permit the assertion of all-purpose general jurisdiction" over Ford in Texas.[22]

UHS is a Delaware corporation with its principal place of business outside of Texas.[23] The only contact Plaintiff claims UHS has with the entire state of Texas is based on the allegation that UHS is liable for the acts and/or omissions of subsidiary DHL.[24] However, Plaintiff has not alleged any facts to disregard the separate entity status of UHS.  Under Texas

---

[19] *Id.* at 1558-59.
[20] *Ford Motor Company v. Cejas*, No. 09-16-00280-CV, 2018 WL 1003791, at *8-10 (Tex. App.—Beaumont Feb. 22, 2018, no pet. h.) (mem. op.).
[21] *Id.* at *6.
[22] *Id.* at *10.
[23] In ruling upon a Rule 12(b)(6) motion to dismiss, the court may consider the petition as well as documents that are "incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). A district court may take judicial notice of matters of public record. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007). Documents publically available may properly be considered on a motion to dismiss. *See, e.g.*, *Funk*, 631 F.3d at 783. *See* Exhibits A and B.
[24] [Doc 1-2] Original Petition, P. 3-14.

law, so long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other.[25] While a court may attribute a separate entity's contacts to another corporate entity in appropriate circumstances, none are pled by Plaintiff.  Here, the Complaint contains no facts and no allegations relating to any factor relevant to a jurisdictional veil piercing determination under Texas law.

In any event, common ownership and directorship of a subsidiary is plainly insufficient to establish the extensive contacts necessary to establish general jurisdiction, as it fails to approach the extensive contacts in *Daimler*, *BNSF*, or *Cejas* where general jurisdiction was found lacking.  Therefore, Plaintiff cannot establish general jurisdiction over UHS in Texas.

## C.    UHS is not Subject to Specific Jurisdiction in Texas.

The Due Process Clause mandates that a court may only exercise specific jurisdiction over a nonresident defendant when that defendant has "purposefully availed" itself of the privileges and benefits of conducting business in the foreign jurisdiction.[26] "This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person'."[27] Moreover, specific jurisdiction requires that "the contacts proximately result from the action by the defendant himself that create a 'substantial connection' with the forum State."[28]  Important here, specific jurisdiction only exists where

---

[25] *Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 72 (Tex. 2016)
[26] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-76 (1985)
[27] *Id.* at 475 (internal citations omitted).
[28] *Id.* (citations omitted).

8

"the defendant's contacts with the forum 'arise from, or are directly related to, the cause of action.'"[29]

Plaintiff has not pled sufficient jurisdictional facts to demonstrate specific jurisdiction over UHS in Texas.  Plaintiff, in conclusory fashion, lumps UHS with all the Defendants and alleges that UHS negligently provided care and treatment to Plaintiff.[30] Plaintiff makes no attempt to chronicle UHS's role in the alleged provision, or lack thereof, of medical care to Plaintiff.  Without any operative facts to chronicle UHS's role in the alleged provision, or lack thereof, of medical care to Plaintiff, it is impossible to determine the link between UHS's contact in Texas and Plaintiff's injury.  In any event, Plaintiff is complaining about a physical injury based on a course of treatment or lack thereof.  Any tort occurred in the exercise of medical judgment or delivery of health care in a Texas hospital, not from the actions of a foreign corporation.

Accordingly, because Plaintiff has failed to allege sufficient jurisdictional facts to establish general or specific jurisdiction, UHS must be dismissed from this lawsuit.

## II.
## DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

By way of its underlying Motion pursuant to Rule 12(b)(6), UHS seeks entry of an Order dismissing the Complaint, in its entirety, for failure to state a claim upon which relief can be granted based primarily on two overarching reasons: (a) failure to meet the requisite pleading standards; and (b) futility under Texas substantive law. *See Eckhardt v. Qualitest Pharm., Inc.*, 751 F.3d 674, 676 (5th Cir. 2014) (affirming dismissal of all claims against generic-drug

---

[29] *Revell v. Lidov*, 317 F.3d at 470 (quoting *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001) (internal quotation marks omitted)).
[30] [Doc 1-2] Original Petition, P. 3-14.

9

manufacturer as "either preempted, not adequately pleaded, or not recognized under Texas law").

## A.      Legal Standard.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted if the claimant failed "to state a claim upon which relief can be granted."[31] Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[32] A complaint cannot survive a motion to dismiss without some factual context sufficient to "state a claim to relief that is plausible on its face."[33] The Court is not required to accept as true conclusory allegations without supporting facts.  The Supreme Court clarified that a "complaint does not suffice if it tenders naked assertions devoid of further factual enhancement."[34] Furthermore, a complaint that "offers only 'labels and conclusions' or a 'formulaic recitation' of the elements of a cause of action will not do."[35] "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[36] "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all allegations in the complaint are true (even if

---

[31] Fed. R. Civ. P. 12(b).

[32] *Id.* at 8(a)(2).

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S. Ct. 1955 (2007))

[34] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

[35] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

[36] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

doubtful in fact)."[37] Dismissal under Rule 12(b)(6) is proper if the complaint lacks an element necessary to obtain relief.[38]

**B.      The Complaint Does Not Plead a Viable Claim Against UHS.**

Plaintiff's Complaint fails to state a claim upon which relief may be granted.  Plaintiff cannot show that UHS owed Plaintiff a legal duty because UHS did not employ, hire, train, educate, or supervise the nursing staff, the physicians, or the resident physicians working at DHL and does not control DHL's day to day operations.[39] To prove an action for negligence, Plaintiff must establish that UHS had a legal duty.[40] Generally, "one person is under no duty to control the conduct of another, even if he has the practical ability to exercise such control." *Nabors Drilling, Inc. v. Escoto*, 288 S.W.3d 401, 404 (Tex. 2009).  Without a legal duty, a defendant cannot be held liable in tort.[41] While relationships can give rise to a duty to control the conduct of another in the appropriate circumstances, none are pled by Plaintiff.  Here, the Complaint contains no facts and no allegations relating to any factor relevant to a relationship that can give rise to a duty to control the conduct of another under Texas law.

As such, Plaintiff has failed to State a Viable Claim against UHS for (1) Negligence or Gross Negligence; (2) EMTALA; (3) derivative liability stemming from the actions of DHL; or (4) derivative liability stemming from the actions of the defendant physicians.

---

[37] *Twombly*, 550 U.S. at 555.

[38] *Campbell v. City of San Antonio*, 43 F.3d 973,975 (5th Cir. 1995)

[39] *See* Exhibit A: Affidavit

[40] *Graff v. Beard*, 858 S.W. 2d 919 (Tex. 1993) (citing *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1991)

[41] *Id*.

1.      Plaintiff Fails to State a Viable Claim for Negligence or Gross Negligence.

UHS did not owe a duty to Plaintiff of ordinary care, Plaintiff has lumped together multiple theories of negligence against UHS with no factual basis for their claims.  However, Plaintiff does not plead any facts to support her allegations that UHS owed any duty to Plaintiff or how UHS was negligent.

Instead, Plaintiff asserts broad, vague, generalized, and conclusory allegations against UHS and fails to establish the required elements for a negligence claim. Thus, dismissal of Plaintiff's negligence claim is appropriate.

2.      Plaintiff Does Not State a Viable Claim under EMTALA.

Plaintiff does not state a viable claim against UHS under EMTALA because UHS is a corporation and not a hospital.[42] Plaintiff generally alleges that UHS is liable for EMTALA violations. Doc. 1-2. However, EMTALA only creates a private right of action against participating hospitals, not corporations, such as UHS.  *Jackson v. East Bay Hosp.*, 246 F.3d 1248, 1260 (9th Cir. 2001). A plaintiff bringing a cause of action under EMTALA must show that the defendant is a hospital who participates in Medicare. *Correa v. Hospital San Francisco*, 69 F.3d 1184, 1190 (1st Cir. 1995).  A participating hospital is one that meets the definition of 42 USCS § 1395x(e) and has executed a Medicare provider agreement with the federal government. 42 U.S.C.A. § 1395dd(e)(2); *Jackson v. E. Bay Hosp*., 246 F.3d 1248 (9th Cir. 2001), *Lopez-Soto v. Hawayek*, 175 F.3d 170, 172 (1st Cir. 1999).

---

[42] *See* Exhibit A: Affidavit

In *Jackson*, survivors of deceased patient brought suit against the hospital and the entity that operated the hospital under EMTALA. *Jackson v. E. Bay Hosp*., 246 F.3d 1248 (9th Cir. 2001). The court rejected the argument that the entity that operated the hospital was liable under EMTALA because an operating entity did not meet the definition of a hospital and lacked a Medicare provider agreement with the federal government. *Id* at 1260. The court held that under 42 USCS § 1395x(e) a hospital is an institution which provides diagnostic services, treatment, and care to patients. *Id.*  As the operating entity provided administrative, purchasing, and financial services to the hospital and did not have a Medicare provider agreement with the federal government. *Id.*  The operating entity was not a participating hospital. *Id.*  Therefore, the court held the operating entity cannot not be held directly liable under EMTALA. *Id.*

Plaintiff does not plead any facts or allege that UHS is a hospital that participates in Medicare.   To the contrary, UHS like the entity in *Jackson*, does not provide diagnostic services, treatment, and care to patients. *See* Exhibit A: Affidavit.  Therefore, as in *Jackson*, UHS cannot be held liable under EMTALA because it is a corporation and not a hospital.

Thus, dismissal of Plaintiff's EMTALA claim is appropriate.

3.    <u>Plaintiff does not state a viable claim against UHS for liability stemming from the actions of DHL.</u>

Plaintiff alleges that UHS is liable for the acts and/or omissions of Defendant, DHL; however, Plaintiff has not alleged sufficient facts to disregard the separate entity status of UHS.  Under Texas law, a corporation is a separate legal entity that ordinarily insulates its owners, shareholders, or members from liability. *See Weston Grp., Inc. v. S.W. Home Health Care, LP*, Civil Action No. 3:12-CV-1964-G, 2014 WL 940329, at *4 (N.D. Tex. Mar. 11, 2014)

(citing Tex. Bus. Orgs. Code § 21.223); *Schlueter v. Carey*, 112 S.W.3d 164, 169 (Tex. App. June 5, 2003) (citing *Pabich v. Kellar*, 71 S.W.3d 500, 507 (Tex. App. 2002). While a court may disregard a business entity's separate legal status in appropriate circumstances, none are pled by Plaintiff.  Here, the Complaint contains no facts and no allegations relating to any factor relevant to an alter ego determination under Texas law.

Thus, Plaintiff's failure to provide specific factual allegations against UHS warrants dismissal of claims that purport to relate to the relationship of UHS and DHL.

### 4. Plaintiff does not state a viable claim against UHS for liability stemming from the actions of physicians.

Plaintiff cannot show that physicians are subject to UHS control or that the physicians had the authority to act on behalf of UHS. In Texas, the law does not presume an agency relationship.[43] If a principal—agent relationship exists, a principal may be liable for an agent's negligence under respondeat superior.[44] Authority to act on the principal's behalf and control are the two essential elements of agency.[45] To prove an agency relationship, the plaintiff must prove that the agent was subject to the principal's right of control and had the authority to act on the principal's behalf.[46]

In this case, Texas' Corporate Practice of Medicine establishes that the physicians are not subject to UHS's control and that the physicians are not authorized to act on behalf of UHS. The act clearly and unambiguously establishes that physicians cannot be employees or

---

[43] *Community Health Sys. Prof'l Sers. v. Hansen*, 525 S.W. 3d 671, 697 (Tex. 2017)

[44] *Arvizu v. Estate of Puckett*, 364 S.W.3d 273, 276-77 (Tex. 2012)

[45] *Suzlon Energy Ltd. v. Trinity Structural Towers, Inc.*, 436 S.W.3d 835, 841 (Tex. App.—Dallas 2014, no pet.); *Reliant Energy Servs. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 783 (Tex. App.—Houston [1st Dist.] 2011, no pet.)

[46] *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 589 (Tex. 2017)

subject to the control of a corporation such as UHS. Relevant provisions relating to the corporate practice of medicine are found in the Texas Occupations Code and include the following:

> _Section 155.001_:    A person may not practice medicine in Texas unless that person holds a license issued by the Texas Medical Board. TEX. OCC. CODE § 155.001

> _Section 155.003_:    A person must satisfy certain eligibility standards — including standards relating to age, professional character, and education — to obtain a medical license. Notably, the requirements for a license to practice medicine are requirements that only an individual can meet; business entities would never be able to comply. TEX. OCC. CODE § 155.003

> _Section 157.001_:    Physicians may delegate to qualified people certain medical acts, but the person to whom the act is delegated is prohibited from representing to others that the person is authorized to practice medicine. TEX. OCC. CODE § 157.001

> _Section 164.052_:    Physicians may not purchase or sell a medical degree, license, or certification for application to TMB for a license to practice medicine. Physicians also may not permit another to use the physician's license to practice medicine, nor can the physician assist another unlicensed person, or a partnership, association, or corporation in practicing medicine. TEX. OCC. CODE § 155.001

The statute unambiguously states that physicians cannot be employees or subject to the control of a corporation.  In the absence of an employee/employer relationship or control, Plaintiff cannot establish that UHS owed Plaintiff any duty.

Thus, Plaintiff's failure to provide specific factual allegations against UHS warrants dismissal of claims that stem from the relationship of defendants physicians.

## III
## CONCLUSION

WHEREFORE, for the reasons set forth above, UHS respectfully requests that the Court GRANT this Motion and dismiss Plaintiff's Complaint with prejudice, including all claims

asserted against UHS, or, in the alternative, enter an Order requiring Plaintiff to make the claims asserted against UHS more definite and certain in compliance with the federal pleading standards, and to dismiss those claims for which Plaintiff cannot make more definite or certain.

Respectfully submitted on April 23, 2021.

GONZALEZ CASTILLO MOYA, LLP


_____/s/Edward J. Castillo_____
Steven M. Gonzalez
SBN: 08131900
FBN: 3321
Edward J. Castillo
SBN: 24040658
FBN: 38007
Ezequiel "Zeke" Moya, Jr.
SBN: 24092865
FBN: 2649227
Eduardo Moya
SBN: 24105674
FBN: 3364208

GONZALEZ CASTILLO MOYA, LLP
1317 E. Quebec Ave.
McAllen, Texas 78503
Email: law@valleyfirm.com
Tel: (956) 618-0115
**COUNSEL FOR DEFENDANTS,**
*LAREDO REGIONAL MEDICAL CENTER, L.P.*
*d/b/a DOCTORS HOSPITAL OF LAREDO and*
*UNIVERSAL HEALTH SERVICES, INC.*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to all counsel of record via CM/ECF electronic filing service (ONLY) on the 23rd day of April, 2021.

Albert M. Gutierrez / Elizabeth C. Boddy / Kelly Canales Feicht
PERSON MOHRER MORALES BODDY GARCIA GUTIERREZ, PLLC
8610 Broadway, Suite 440
San Antonio, Texas 78217
EMAIL: amg@pmbglaw.com / eboddy@pmbglaw.com / kfeicht@pmbglaw.com
**ATTORNEYS FOR PLAINTIFF**

Frank A. Doyle
MYERS DOYLE
7676 Woodway, Suite 350
Houston, Texas  77063
Email: mailto:mramirez@mlllaw.comfdoyle@myersdoyle.com
**ATTORNEYS FOR DR. PAUL CHISTOPHER GIASI AND DR. ROBERT KIETH LANDRY**

Russell W. Schell
SCHELL COOLEY RYAN CAMPBELL LLP
5057 Keller Springs RD., Suite 425
Addison, TX 75001
Email: Rschell@schellcooley.com / Mobach@schellcooley.com
**ATTORNEYS FOR DR. PRAKASH HEGDE AND DR. SANDRA TARAPASADE**


                        /s/Edward J. Castillo
                        Edward J. Castillo